*aEE*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADA Y. CHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 6534 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| S&C ELECTRIC COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ada Chan brings this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, alleging that her employer, Defendant S&C Electric Company, discriminated against her in the terms of her employment because she is Chinese-American. S&C now moves for summary judgment against Chan. For the following reasons, the Court grants S&C's motion.

### I. Factual Background

The following relevant facts are undisputed, unless otherwise specified. The Court only considers a fact to be disputed if the party asserting the dispute offers evidence supporting that assertion. *See* Fed. R. Civ. P. 56(c).

Ada Chan is a Chinese-American female who has been employed by S&C since October 2000 at its Chicago facility as a first-shift, entry level hourly Assembler in Department 781 on the Omni-Rupter line. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶¶ 3 & 11.) S&C is a company that manufactures switching and protection products for electric power transmission and distribution. (Def. St. ¶ 4.) As an Assembler at S&C, Chan's job duties

1

include assembling component parts for certain products sold by S&C. (Def. St. ¶ 12.) During all relevant times, Chan's direct supervisor at S&C has been Timothy Purdy. (Def. St. ¶ 13.)

Purdy provided the Assemblers under his supervision, including Chan, with feedback through annual written performance appraisals, discussions on the shop floor concerning issues such as productivity, and regular monitoring and evaluation. (Def. St. ¶¶ 16-20.) Chan was never disciplined, nor did she ever lose any pay or benefits due to Purdy's evaluations. (Def. St. ¶ 21.) In fact, Purdy consistently gave Chan high ratings on her performance appraisals. (Def. St. ¶¶ 22-27.)

When business conditions warrant, Assemblers who report to Purdy may be asked to work overtime. (Def. St. ¶ 29.) Overtime assignments are made at the discretion of S&C's management, and depend upon the company's business needs. (Def. St. ¶ 30.) While Chan purports to dispute this fact, she provides no contradictory facts in response, and the fact is therefore undisputed. (Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶ 30.)[1] In 2004, Chan worked the most overtime hours of all the employees employed by S&C in a full-time capacity on the first shift as an entry-level Assembler who reported to Tim Purdy and who devoted at least part of their time on the Omni-Rupter line. (Def. St. ¶ 32.) In fact, she worked 876 hours of overtime in 2004, 231 hours more than the employee who worked the second most number of overtime hours on the line. (Def. St. ¶ 31.) In 2005 and 2006, Chan accomplished the same feat, working 949.1 and 838.9 overtime hours, respectively. (Def. St. ¶¶ 31, 33-34.) In 2007, Chan worked the second highest number of overtime hours in the group, six hours less than the leading overtime worker. (Def. St. ¶ 35.) Chan worked a lot of overtime during the years 2004-2007

---

[1] The Court also notes that Chan's response to S&C's Local Rule 56.1(a)(3) Statement of Material Facts does not provide a concise summary of each paragraph to which her responses are directed. This is a violation of Local Rule 56.1(b)(3)(A). The Court will not strike Chan's responses for failure to comply with the Local Rules, but the Court admonishes Chan's counsel to conform to the rules in future filings.

2

because she was the only employee performing her assigned duties during specific periods of time. (Pl. Resp. ¶¶ 32-35.) In both 2008 and 2009, Chan worked the fifth highest number of overtime hours in the group, which contained 17 and 14 employees, respectively. (Def. St. ¶¶ 36-37.) Chan never requested to work overtime because she felt that Purdy would best know when overtime hours were needed. (Def. St. ¶ 38.)

On three separate days in October 2006, and on various other unspecified dates, Purdy told Chan to leave her workplace at her regularly assigned time while many of the other employees in the department remained and worked overtime. (Pl Resp. Ex. 1 at ¶ 24.)

In 2006, Chan asked a co-worker, Hugo Torres, to show her how to assemble a particular "toggle" that was occasionally used on certain S&C products. (Def. St. ¶ 43.) The parties dispute whether Chan was trained on the assembly or denied training. (Def. St. ¶ 44; Pl. Resp. ¶¶ 44-45.) This was the only time Chan believes she was denied training. (Def. St. ¶ 43.) Assembling the toggle has never been part of Chan's regular job duties. (Def. St. ¶ 46.) Her job title, compensation, and terms and conditions of employment have not been affected by her ability or inability to assemble the toggle. (Def. St. ¶ 47.) Chan purports to dispute this fact, but in support states only that "all employees in Plaintiff's department learned how to assemble all parts used in the Department." (Pl. Resp. ¶ 47.) Not only does this statement fail to explain how Chan's terms and conditions of employment were affected by her alleged inability to obtain training on the assembly of the toggle, but it is not supported by the record citation Chan provides. Chan cites to Torres's deposition testimony that everyone in the department learns to put together "other parts" at some point. (Pl. Resp. ¶ 47; Def. St. Ex. I at p. 19).

On or about August 15, 2006, Chan submitted an application for transfer to an Assembler position on a different team at S&C, where she would have worked for a supervisor named Jeff

3

Welter, rather than Purdy. (Def. St. ¶ 50.) In response to a request from the company's Human Resources Department on August 21, 2006, Purdy stated that he had been working with Welter on a schedule to allow Chan a time to try the requested position. (Def. St. ¶¶ 51-52.) He also mentioned to the Human Resources Department that he thought the position would be too physically demanding for Chan. (Def. St. Ex. D. at Ex. 1.) Two days later, on August 23, 2006, Chan withdrew her transfer application because she was frustrated with what she perceived to be a lack of cooperation by Purdy in scheduling a time for her to go to Welter's department. (Def. St. ¶ 53; Pl. Rule 56.1(b)(3)(C) Statement of Additional Facts (hereinafter "Pl. St.") ¶ 19.) The job Chan originally requested would not have changed her job title, rate of pay, benefits, or other compensation. (Def. St. ¶ 54.) The only change in conditions in the new job that Chan points to is the fact that she would be working for a different supervisor. (Pl. Resp. ¶ 54.)

Chan sets forth a number of other facts in her Local Rule 56.1(b)(3)(C) Statement of Additional Facts. However, many of those facts are excluded from the Court's statement of facts because they are either unsupported by citations to the record or are supported only by Chan's references to her own journal and her doctor's notes about Chan's recollections of what happened at work. The doctor's notes are clearly hearsay not subject to any exception. *See* Fed. R. Evid. 801-803. Chan's journal entries are also hearsay despite her claims that they are contemporaneous recordings of her impressions. While Rule 803(1) provides an exception to the hearsay rule for a statement of a present sense impression, "the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). "A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near

4

simultaneous perceptions." *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002). Here, Chan admitted in her deposition that she did not make her journal entries about her work conditions during work, but rather at home after she returned from work. (Def. St. ¶ Ex. E. at p. 120.) Chan points to her affidavit as proof that they were contemporaneous records, but she cannot create a dispute by contradicting her own deposition testimony with a subsequent affidavit. *LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 908 (7th Cir. 2010). Thus, these statements were apparently made after substantial time for deliberation, and it appears they were possibly made for a specific purpose such as litigation or therapy. They do not fall into the present sense impression exception to the hearsay rule.

The Court also disregards Chan's facts statements suggesting that she was subject to scrutiny and criticism by Purdy and that other employees were not because Chan provides no evidence regarding the scrutiny and criticism Purdy directed at her coworkers. (*See* Pl. St. ¶¶ 12-13.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of

5

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

### III. Analysis

In her complaint, Chan bases her discrimination claims on four actions taken by S&C. First, she claims Tim Purdy harassed her by scrutinizing her more than her co-workers. Second, she claims S&C denied her training. Third, she claims S&C denied her overtime. Finally, she claims the company denied her request to be transferred.

All of Chan's claims fail because Chan provides absolutely no evidence that the actions she suffered were motivated by discriminatory animus or that similarly situated employees who were not Chinese-American were not subject to the same actions. The Court need not provide a detailed analysis of the facts because the evidence is simply lacking. Thus, she cannot prevail on her discrimination claims. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008) (describing the elements of both the direct and indirect methods for proving discrimination).[2]

Chan's claim that she was denied training on how to assemble the toggle fails for the additional reason that Chan concedes that the lack of training had no effect on the terms and conditions of her employment as it was not part of her job duties. Thus, she is also unable to satisfy the requirement that she prove that she suffered from a materially adverse employment action. *de la Rama v. Ill. Dept. of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (quoting *Oest v. Ill. Dept. of Corr.*, 204 F.3d 605, 612 (7th Cir. 2001)) (a materially adverse employment action must amount to more than "a mere inconvenience or an alteration of job responsibilities").

---

[2] The Court does not distinguish between the elements required for Chan's claim under Title VII and her claim under § 1981 because they do not differ in any relevant respect. *See Alexander v. Wisc. Dept. of Health &Family Servs.*, 263 F.3d 673, 681-82 (7th Cir. 2001).

Finally, Chan's claim that she was denied a transfer fails for the additional reason that she was not denied the transfer. Instead, she withdrew her request a week after she submitted it, prior to any decision by S&C.

In short, Chan's case is woefully deficient in many respects. She has conceded that her employer did not actually take some of the actions she originally alleged. Others, such as her supervisor's alleged decision to deny her training, are not material. Her claims of denied overtime are also severely suspect given the fact that she worked far more overtime than her counterparts. Her claims of harassing scrutiny are also undermined to a certain extent by the fact that she has never been disciplined and receives high marks on all of her performance appraisals. But, ultimately, even if all of her claims are taken as true, they still fail, because she has provided no evidence that any of S&C's actions were discriminatory. Her failure is compounded by the inadequacy of her statement of facts and her response to S&C's statement. Sometimes she fails to provide admissible evidence to support her claim, other times she fails to provide any evidence at all. Chan may have been hurt by some of the things Purdy told her, but she has not provided this court with enough evidence to support a claim for discrimination.

## *CONCLUSION*

For the above reasons, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

6/27/11
Dated

Hon. William J. Hibbler
United States District Court

7